IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

GLC ON-THE-GO, INC.,                         Civil Action No.   2:23-cv-2031

        Plaintiff,

    v.

BONAMOUR HEALTH GROUP, LLC,
d/b/a BONAMOUR HEALTH GROUP,
LAKEVIEW HEALTHCARE OPERATING,
LLC d/b/a LAKEVIEW HEALTHCARE &
REHABILITATION CENTER and
MULBERRY HEALTHCARE
OPERATING, LLC d/b/a MULBERRY
HEALTHCARE & REHABILITATION
CENTER,

        Defendants.

## **COMPLAINT**

Plaintiff, GLC On-The-Go, Inc. ("GLC"), by its attorneys, Gregg A. Guthrie, Esquire and Summers, McDonnell, Hudock, Guthrie & Rauch, P.C., files the following Complaint in Civil Action:

### I. **INTRODUCTION**

1. This civil action is brought **(i)** to enforce the terms of a valid contractual agreement entered into by the Parties; **(ii)** to seek judgment against the Defendants, jointly and severally, in the amount of an outstanding, unpaid past due balance of **$189,533.81** for services rendered to the Defendants under the aforesaid contract; and **(iii)** to recover interest, attorney's fees, litigation-related costs and such other relief as this Honorable Court deems proper against Defendants.

## II. **PARTIES**

2. Plaintiff, GLC On-The-Go ("GLC"), is a Florida corporation licensed to do business in the state of Florida with a principal place of business located at 55 Weston Road, Suite 300, Weston, FL 33326.

3. GLC is in the business of providing qualified healthcare personnel and staffing services to healthcare facilities including registered nurses, licensed practical nurses, certified nursing aides, home health aides, medical assistants and other qualified healthcare personnel with specific skills and experience.

4. Defendant, Bonamour Health Group, LLC d/b/a Bonamour Health Group ("Bonamour"), is a Pennsylvania Foreign Limited Liability Company licensed to do business in the Commonwealth of Pennsylvania with a principal place of business located at 448 Old Clairton Road, Clairton, PA 15025.

5. Upon information and belief, Bonamour owns and operates seven (7) Pennsylvania healthcare and rehabilitation facilities that provide short- and long-term care, rehabilitation, hospice, respite care and personal care services to communities throughout Western Pennsylvania. Bonamour's seven (7) healthcare and rehabilitation facilities require staffing with qualified and experienced healthcare personnel such as those provided by GLC.

6. Defendant, Lakeview Healthcare Operating, LLC d/b/a Lakeview Healthcare & Rehabilitation Center ("Lakeview"), is a Limited Liability Company licensed to do business in the Commonwealth of Pennsylvania with a principal place of business located at 15 W. Willow Street, Smethport, PA 16749. Upon information and belief, Lakeview is owned, operated and managed by Bonamour.

7. Defendant, Mulberry Healthcare Operating, LLC d/b/a Mulberry Healthcare & Rehabilitation Center ("Mulberry"), is a Limited Liability Company licensed to do business in the Commonwealth of Pennsylvania with a principal place of business located at 411 W. Mahoning Street, Punxsutawney, PA 15767. Upon information and belief, Mulberry is owned, operated and managed by Bonamour.

8. At all times material hereto, Bonamour had authority to enter into contracts with third parties on behalf of Lakeview and Mulberry and to legally bind Lakeview and Mulberry to contracts with third parties entered into by Bonamour on their behalf.

### III. JURISDICTION AND VENUE

9. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because the matter in controversy is between citizens of different states and the amount in controversy, exclusive of interests and costs, exceeds $75,000.

10. This Court has personal jurisdiction over Bonamour because Bonamour has the required minimal contacts with this forum to establish personal jurisdiction. Bonamour (a) is registered to do business in Pennsylvania; (b) engages representatives in Pennsylvania; and (c) has at least one physical office located within the Commonwealth of Pennsylvania.

11. This Court has personal jurisdiction over Lakeview because Lakeview has the required minimal contacts with this forum to establish personal jurisdiction. Lakeview (a) is registered to do business in Pennsylvania; (b) engages representatives in Pennsylvania; and (c) has at least one physical office located within the Commonwealth of Pennsylvania.

12. This Court has personal jurisdiction over Mulberry because Mulberry has the required minimal contacts with this forum to establish personal jurisdiction. Mulberry (a) is registered to do business in Pennsylvania; (b) engages representatives in Pennsylvania; and (c) has at least one physical office located within the Commonwealth of Pennsylvania.

13. Based upon the Defendants' contacts with this forum as set forth above, it was wholly foreseeable to the Defendants that they would be haled into Court and would be subject to the jurisdiction of the United States District Court for the Western District of Pennsylvania.

14. Venue is proper in the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1391 because: (a) the Defendants reside in, are citizens of and are domiciled in Western Pennsylvania; (b) this Court has personal jurisdiction over all of the parties; and (c) a substantial portion of the events giving rise to the claims asserted in this action occurred in this judicial district.

## IV. FACTUAL ALLEGATIONS

### The July 5, 2023 Medical Staffing Agreement

15. On July 5, 2023, GLC and Bonamour entered into a written Medical Staffing Agreement ("MSA") where GLC agreed to provide qualified and experienced healthcare personnel and staffing services to Bonamour and its seven (7) Pennsylvania Healthcare facilities identified on p. 7 of the MSA, including Bonamour's Lakeview and Mulberry facilities. A true and correct copy of the fully executed Medical Staffing Agreement ("MSA") entered into by the parties on July 5, 2023 is attached hereto as **Exhibit "A."**

16. Under the MSA, the parties agreed that Bonamour would timely communicate in writing to GLC and Staff any performance related issues, violations of policies, rules or regulations or any other concerns or problems with the Staff provided by GLC. *See* **Exhibit "A."**

17. Under the MSA, the parties agreed that in exchange for GLC providing professional healthcare personnel and staffing services to Bonamour and its healthcare facilities identified on p. 7 of the MSA, Bonamour would compensate GLC in accordance with the payment terms set forth and outlined in the MSA. *See* **Exhibit "A."**

18. Under the MSA, the parties agreed that GLC "shall submit documentation in the form of time records for the services provided to [Bonamour]," that "the Timesheet report will be sent to the facility for review weekly, and the timesheets will be considered correct and approved for billing if we do not hear back within 48 hours" and that if no written dispute is provided to GLC within 48 hours, "then [Bonamour] waives its right to dispute the respective time records and the GLC submitted time records shall be deemed accurate with payment due without reduction or set-off in accordance with the payment terms." *See* **Exhibit "A."**

19. The MSA further provides on p. 10 that "The Timesheet report will be sent to the facility for review (expected weekly), and timesheets will be considered correct and approved for billing if we do not receive a timely written dispute detailing correction within 48 hours of receipt of the timesheet; Failure to object to the respective timesheet waives any objection or dispute to the subject amount being invoiced for that timesheet." *See* **Exhibit "A"** at p. 10.

20. Under the MSA, the parties agreed that "[Bonamour] shall be invoiced for Staff hours based on GLC submitted timesheets…" and "the invoices will be sent to the facility for review weekly, and invoices will be considered correct if we do not hear back within 48 hours."  See **Exhibit "A."**

21. The MSA further provides on p. 10 that "The invoices will be sent to the facility for review (expected weekly), and invoices will be considered correct if we do not receive a timely written dispute detailing correction within 48 hours of receipt of the invoice." See **Exhibit "A"** at p. 10.

22. Under the MSA, the parties agreed that "full payment [from Bonamour] shall be received within fifteen (15) days of the invoice date" and that any "…past due balances shall be charged interest at the rate of 1.5 % per month on the outstanding balance until paid in full…." See **Exhibit "A."**

23. In paragraph 35 of the MSA, entitled "**Liability**," the parties agreed that:

> Each entity identified in this agreement, including its exhibits and subsequent amendments, or otherwise utilizing the services or staff of GLC, agree to be jointly and severally liable for any and all obligations of the other entities. This liability for others is regardless of the timing of the liability. GLC shall have no obligation to sue any specifically liable party and may sue all or any part of the liable entities without limiting its rights, damages and the joint and several liability status.

See **Exhibit "A"** at p. 6.

### Staffing Services Provided To Bonamour Under The MSA

24. Pursuant to the MSA, beginning in July, 2023 and continuing through October, 2023, Bonamour requested and GLC provided qualified and experienced healthcare personnel and staffing services to Bonamour and two (2) of its healthcare

facilities, namely, Lakeview Healthcare & Rehabilitation Center located in Smethport, PA and Mulberry Healthcare & Rehabilitation Center located in Punxsutawney, PA.

25. Bonamour received, accepted and utilized the healthcare personnel and staffing services provided by GLC to Bonamour and its Lakeview and Mulberry facilities pursuant to the terms of the MSA.

26. At no time during the period of July, 2023 through October, 2023, did Bonamour (or Lakeview or Mulberry) timely communicate in writing to GLC any performance related issues or other problems or concerns with any of the healthcare personnel or staffing services provided by GLC to Bonamour and its Lakeview or Mulberry facilities.

27. In accordance with the terms of the MSA, GLC sent timely invoices for the healthcare personnel and staffing services it provided to Bonamour and its Lakeview and Mulberry facilities for July, 2023 through October, 2023, with full payment due within fifteen (15) days of the invoice date. True and correct copies of GLC's invoices for the staffing services provided to Bonamour and its Lakeview and Mulberry facilities for the months of July, 2023 through October, 2023 are collectively attached hereto as **Exhibit "B."**

28. At no time after receiving GLC's invoices did Bonamour (or Lakeview or Mulberry) raise any objection, issue or concern, in writing or otherwise, disputing the accuracy or validity of GLC's invoices or the charges contained therein.

29. Although the payment terms of the MSA require that full payment be made within fifteen (15) days of the invoice date, to date, Bonamour has failed or refused to make any payment to GLC on any of the attached invoices submitted by GLC.

30. The total unpaid, outstanding past due balance for the staffing services provided by GLC to Bonamour and its Lakeview facility as reflected on the attached invoices is **$154,911.97**, inclusive of accrued interest of **$2,343.50**. *See* **Exhibit "B."**

31. The total unpaid, outstanding past due balance for the staffing services provided by GLC to Bonamour and its Mulberry facility as reflected on the attached invoices is **$34,621.83**, inclusive of accrued interest of **$820.59**. *See* **Exhibit "B."**

32. The total combined unpaid, outstanding past due balance for the staffing services provided by GLC to Bonamour and its Lakeview and Mulberry facilities is **$189,533.81**, inclusive of accrued interest of **$3,164.09**.

## GLC's Demands to Bonamour for Payment

33. Over the past several months, GLC has repeatedly contacted Bonamour and demanded that Bonamour remit full payment of the outstanding, unpaid balance due to GLC in the amount of **$189,533.81**.

34. Further, on November 10, 2023, counsel for GLC sent a letter to Mike Zidele, CFO of Bonamour, demanding immediate payment of the outstanding past due balance of **$189,533.81**. A true and correct copy of GLC's counsel's letter of November 10, 2023 is attached hereto as **Exhibit "C."**

35. On November 16, 2023, counsel for GLC also emailed a copy of the November 10, 2023 demand letter to additional representatives of Bonamour, including Bonamour's CEO and CFO, Shaya Zidele and Mike Zidele. A true and correct copy of GLC's counsel's e-mail to Bonamour dated November 16, 2023 is attached hereto as **Exhibit "D."**

36. Despite the repeated demands of GLC that Bonamour make full payment on the outstanding past due balance, to date, Bonamour has failed or refused to make any payment to GLC.

37. In accordance with the terms of the MSA, interest on the unpaid, past due balance continues to accrue at the rate of 1.5 % per month.

## COUNT I
## Breach of Contract
### (Plaintiff v. All Defendants)

38. Paragraphs 1 through 37 of this pleading are incorporated herein by reference.

39. At all times material hereto, the MSA constituted a valid and legally binding contract between the parties.

40. At all times material hereto, the MSA was in full force and effect.

41. At all times material hereto, GLC fully complied with the terms of the MSA in providing the requested healthcare personnel and staffing services to Bonamour and its Lakeview and Mulberry facilities.

42. All conditions precedent to Bonamour's payment obligations under the MSA have occurred and have been fully performed and satisfied by GLC.

43. Bonamour's failure or refusal to make any payment to GLC for the requested healthcare personnel and staffing services provided by GLC to Bonamour and its Lakeview and Mulberry healthcare facilities constitutes a material breach of the MSA.

44. As the direct and proximate result of Bonamour's material breach of the MSA in failing or refusing to make payment to GLC as set forth above, GLC has incurred damages in the amount of **$189,533.81**.

45  In addition to the damages incurred by GLC in the amount of **$189,533.81** as the result of Bonamour's material breach of contract, under the terms of the MSA, GLC is entitled to recover accrued interest as well as attorney's fees and litigation-related costs incurred by GLC in bringing the present action to enforce its rights under the MSA.

46.  Pursuant to paragraph 35 of the MSA, Bonamour and its seven (7) Pennsylvania healthcare facilities identified in the MSA, including Lakeview and Mulberry, expressly agreed to be jointly and severally liable for the liability and obligations of each other.

47.  Accordingly, GLC demands judgment in its favor and against the Defendants, jointly and severally, in the amount of **$189,533.81**, along with additional accrued interest and late charges, pre-judgment interest and attorneys' fees and litigation-related costs incurred by GLC in bringing the present action to enforce its rights under the MSA.

## COUNT II
### Unjust Enrichment
(Plaintiff v. All Defendants)

48.  Paragraphs 1 through 47 of this pleading are incorporated herein by reference.

49.  As set forth in Count I, *supra*., the Defendants' failure to make payment on the outstanding, unpaid past due balance of **$189,533.81** constitutes a material breach of contract.

50.  In addition to and/or in the alternative to GLC's breach of contract claim set forth in Count I, *supra*., GLC asserts that the Defendants have been unjustly enriched by receiving, accepting, utilizing and benefitting from the healthcare personnel and staffing

services provided by GLC to Bonamour and its Lakeview and Mulberry facilities without compensating GLC for those services.

51. The Defendants knew that GLC expected to be paid for the healthcare personnel and staffing services provided to the Defendants as set forth in the payment terms of the MSA.

52. The Defendants have been unjustly enriched by retaining and enjoying the benefit of the healthcare personnel and staffing services provided by GLC to the Defendants at the expense of GLC.

53. The fair and reasonable value of the healthcare personnel and staffing services provided by GLC to the Defendants is **$189,533.81**.

54. It would be inequitable for the Defendants to retain the benefit of the services provided by GLC without adequately compensating GLC for the fair and reasonable value of those services.

55. Accordingly, GLC demands judgment in its favor and against the Defendants, jointly and severally, in the amount of **$189,533.81**, along with additional accrued interest and late charges, pre-judgment interest, as well as attorneys' fees and litigation-related costs incurred by GLC in bringing the present action to enforce its rights under the MSA.

## V. REQUEST FOR RELIEF

Wherefore, Plaintiff, GLC On-The-Go, Inc., respectfully requests that this Honorable Court:

(a) Enter judgment in favor of the Plaintiff, GLC On-The-Go, Inc., and against all Defendants, jointly and severally, in the amount of **$189,533.81**;

(b) Award additional accrued interest from October 31, 2023 to the date of judgment at the rate of 1.5% per month as provided by the MSA;

(c) Award pre-judgment interest from the date of the Defendants' breach to the date of judgment;

(d) Award attorneys' fees and litigation-related costs and expenses incurred by GLC in bringing the present action to enforce its contractual rights under the MSA; and

(e) Award such other relief as this Honorable Court deems just and proper.


A JURY TRIAL IS DEMANDED ON ALL CLAIMS PURSUANT TO F.R.C.P. 38.


Respectfully submitted

**SUMMERS, MCDONNELL, HUDOCK, GUTHRIE & RAUCH, P.C.**


By:   /s/ Gregg A. Guthrie
Gregg A. Guthrie (Pa I.D. #59203)
811 Camp Horne Road, Suite 220
Pittsburgh, PA 15237
Phone: (412) 261-3232
Facsimile: (412) 261-3239
E-Mail: gguthrie@summersmcdonnell.com
*Attorneys for Plaintiff, GLC On-The-Go, Inc.*

Dated: November 27, 2023